# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00339-COA

**CNEALEXIS GRAY**                                                    **APPELLANT**

**v.**

**MELISSA ANN BAILEY JOHNSON**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2023 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | T. JACKSON LYONS |
| ATTORNEY FOR APPELLEE: | LISA JORDAN DALE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 03/19/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Cnealexis Gray appeals from the chancery court's judgment finding that her father, Donald Davis, intended to name Melissa Johnson as the sole pay-on-death beneficiary of a certificate of deposit at United Mississippi Bank. Gray argues that the chancellor's finding was not supported by substantial credible evidence. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Gray and Melissa are half-sisters born to different mothers but the same father: Donald Davis. Davis is deceased, having passed away at sixty years old in August 2020. Prior to his death, Davis opened an account in the form of a certificate of deposit (CD) with United Mississippi Bank (UMB) on January 11, 2019. Attached to the CD were "Additional Terms and Disclosures" and an "Account Agreement." On the front of the page with the

additional terms and disclosures, there is a box labeled "Account Ownership," which also includes a section where the owner of the account can designate the pay-on-death beneficiary. Notably, this section calls for the "Beneficiaries' name and address." In this box, the following appears on a single line "Melissa Ann Bailey [Gray's social security number] [Melissa's date of birth]."[1]

¶3. Meanwhile, on the page labeled "Account Agreement," there is a box labeled "Beneficiary Designation" wherein the option "Pay-On-Death (POD)" is selected. Below this box is another box labeled "Beneficiary Name(s), Address(es), and SSN(s)." Within this box is typed, on a single line, "Melissa Ann Bailey [Gray's social security number] [Melissa's date of birth]."[2]

¶4. The terms of the CD stated that if multiple beneficiaries are listed, then the funds of the account will be split equally between all listed beneficiaries. The CD was initiated in early 2019, and as of August 2020, there was $127,000 in the CD.

¶5. Following Davis's death, Melissa filed a Petition for Letters of Administration, requesting that she be named the administratrix of Davis's estate. After Melissa was appointed the administratrix, she filed a petition for adjudication of heirs, joining Gray as an interested party based on Gray's statements to Melissa that Davis was Gray's father. Melissa filed these petitions despite the fact that Gray filed an affidavit, which is mentioned but not

---

[1] Both parties stipulated that Melissa Ann Bailey is Melissa Johnson's maiden name and that the birth date is hers. They also agreed that the social security number listed between Melissa's maiden name and her birth date is Gray's social security number.

[2] The information appears exactly as it does on the Additional Terms and Disclosures page under "Account Ownership."

contained in the record, stating, "I C'Nealexis Gray do not make a claim to the Estate of Donald Davis as an heir." According to the record, the court entered a decree naming Melissa as Davis's sole heir at law.

¶6. In September 2020, UMB noticed that Melissa's name was listed but that Gray's social security number was also listed. Seeing the possibility of confusion that this presented, UMB filed a petition for an interpleader, *see* M.R.C.P. 22(b), with the Chancery Court of Adams County, requesting that it be dismissed as a party and that Davis's daughters be allowed to contest the ownership of the CD. The court granted the petition and released UMB from all liability, further ordering Gray and Melissa to assert any claims to the funds of the account.

¶7. Gray, a resident of Mississippi acting pro se, filed an "Intestate Successor Claim" requesting the full $127,000 be disbursed to her, alleging she had a witness[3] who could attest to the fact that Davis intended to "[leave] me money in a CD in the amount of approximately $100,000.00 and funds were left for Melissa Ann Bailey." Gray also stated that although she originally agreed to accept half the funds, she claimed she said so because she thought there had been a bank error and that she now was only interested in receiving the full amount of the CD.

¶8. Melissa, a resident of Texas, then filed a motion for summary judgment, arguing that she is the sole named beneficiary under the pay-on-death provision of the CD and that the addition of Gray's social security number is of no consequence in determining the rightful

---

[3] Despite Gray making this claim in her initial filing, Gray never produced any affidavits or witness testimony in support.

named beneficiary. Because there were no genuine issues of material fact, Melissa requested Gray's claim be dismissed as a matter of law. Along with the motion, Melissa also submitted her own notarized affidavit alleging that Davis had informed her during his lifetime that he had purchased several CDs and had listed her as the pay-on-death beneficiary. She also stated she had received funds from several other CDs and accounts wherein she was identified as the pay-on-death beneficiary.

¶9.     The chancery court found that the beneficiary designation form allowed for multiple beneficiaries to be designated and that Davis may have intended multiple beneficiaries based on the fact that he included Gray's social security number. Because the question of Davis's intent was a material issue of fact, the court denied the motion for summary judgment. The court then set a hearing for parties to present testimony on the question of who Davis intended to designate as his beneficiary or beneficiaries.

¶10.    Prior to the hearing, the parties stipulated to the following facts: (1) Melissa claims the CD as the person whose name and date of birth are listed under the designation of beneficiaries; (2) Gray claims the CD as the person whose social security number is listed under the designation of beneficiaries; (3) neither Melissa nor Gray were present when Davis purchased the CD or filled out the beneficiary designation form at UMB; (4) Melissa's maiden name "Melissa Ann Bailey" is the only name on the designation of beneficiaries; (5) Melissa's date of birth is the only one listed on the designation of beneficiaries; (6) Gray's social security number is the only social security number on the designation of beneficiaries; and (7) there is no address entered in the designation of beneficiaries.

4

¶11.    At the hearing, Melissa called Earline Kinnie, an eighteen-year employee of UMB and the bank officer who assisted Davis in his purchase of the CD and filled out the beneficiary designation form. Kinnie stated she knew Davis as he would occasionally visit the bank. Kinnie identified the CD and the account agreement, which included the beneficiary designation form. Kinnie stated that Davis provided her with all of the information for the CD and the beneficiary designation form, and she typed it into a computer. Kinnie testified that pursuant to Davis's oral instructions, she marked the pay-on-death beneficiary designation box and typed Melissa Ann Bailey's name, the social security number listed on the document (Gray's), and the birth date listed on the document (Melissa's). Kinnie also testified that Davis reviewed all the information he provided before signing the document. She also stated that when Davis came in to name a beneficiary on other accounts, he consistently identified Melissa as the pay-on-death beneficiary.

¶12.    Kinnie also testified that Davis provided her with the date of birth that is listed on the document, saying that "we ask the customer for that information, names, and date of birth." When asked about the social security number, Kinnie stated, "That always comes from the customer. . . . We ask the name, social, and date of birth." When asked about the form asking for an address as well, Kinnie said, "We only ask for name, social, and date of birth."

¶13.    Kinnie stated that on the date Davis signed the documents, he appeared to be of clear mind and did not seem any different than when she previously had done business with him. She also confirmed that nobody else was with Davis at the bank that day.

¶14.    Gray, still acting pro se, did not question Kinnie. Instead, Gray testified with the

5

Chancellor asking her questions. Gray stated that she did not know about the CD until the bank filed the interpleader action.[4] She stated that when she and Melissa were cleaning out Davis's home after his death, they found "four or five" CDs, and Gray saw Melissa listed on all of them. However, after receiving notice of the interpleader action, Gray saw that one of the CDs included her social security number. Gray said all the other CDs had Melissa's name, birth date, and social security number. The only one with Gray's social security number was the one at issue in the present case. Gray also stated that she knew nothing about Davis's business or finances.

¶15. Melissa then testified in rebuttal to Gray's testimony. Melissa stated that she and Davis discussed his finances and business and that Davis had told her he was leaving everything to her. She said Davis had told her about several CDs at multiple banks, and that she was the named beneficiary on all the accounts.

¶16. Following the hearing, the court entered its final order. The court recognized that the key confusion in this case arose based on the fact that Gray's social security number appeared between Melissa's name and birth date on only one of the CD's beneficiary designations.

¶17. In considering this issue, the court quoted the following:

> There is no rule which requires a testator to designate a beneficiary by his or her full or legal name. The designation will be sufficient as long as the name and description used will, when applied to the facts and circumstances, identify the person the testator intended.

Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 9:12, at 229 (3d ed.

---

[4] This is inconsistent with the language of UMB's Petition to Interplead Funds, which stated that "Each Claimant has contacted UMB requesting payment to her of the proceeds of the Certificate of Deposit."

6

2003). However, despite this being the only authority cited in the order, the court relied on Kinnie's testimony and what can only be described as common sense, finding:

> Since parents do not normally refer to their children by social security number but by name it is only rational to believe that had Mr. Davis intended to include Cnealexis that he would have provided Ms. Kinnie with her name just as he did Melissa.

The court also relied on the fact that Gray's social security number was positioned between Melissa's name and birth date and stated that "[i]f intended to identify more than one beneficiary it would have been more natural to have their identities on separate lines." The court further found that other accounts at UMB named Melissa as the beneficiary and included her social security number and birth date correctly. Lastly, the court found that Kinnie had testified that Melissa was named as the pay-on-death beneficiary and that Davis had confirmed to Kinnie that Melissa was to be the beneficiary. Considering all of the above facts, the court found that Davis intended Melissa to be the sole pay-on-death beneficiary.

¶18. Gray now appeals the trial court's final judgment, arguing that the chancellor failed to state any legal standard used to decide this case and that the decision rests upon "speculation unsupported by substantial credible evidence."

## DISCUSSION

¶19. "We will not disturb a chancellor's findings of fact unless they are manifestly wrong or clearly erroneous or the chancellor applied the wrong legal standard." *Ward v. Cranford*, 365 So. 3d 308, 314-15 (¶18) (Miss. Ct. App. 2021); *see also Catlett v. Catlett*, 358 So. 3d 366, 375 (¶44) (Miss. Ct. App. 2023). However, questions involving the construction and interpretation of contracts or wills are questions of law that we review de novo. *Id*. at 315

7

(¶18); *see also Neill v. Earls*, 343 So. 3d 1071, 1076 (¶8) (Miss. Ct. App. 2022) ("When reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review.").

¶20. "The question of law/question of fact dichotomy requires a two-step inquiry." *Ward*, at 315 (¶19). The court must determine whether the contract is ambiguous. *Id.* A contract is ambiguous if it is "subject to more than one reasonable interpretation." *Id.* at (¶20). Whether a contract is ambiguous is a question of law for the court to decide and is subject to de novo review on appeal. *Id.* If the contract's terms are clear and unambiguous, then the contract must be enforced as written. *Id.*

¶21. In general, there are two kinds of ambiguity: (1) *patent* ambiguity, which appears on the face of the contract; and (2) *latent* ambiguity, which arises from words which are uncertain when applied to the subject matter of the contract. *Id.* at 315-16 (¶24). A latent ambiguity arises when a "writing appears on the face of it[] certain and free from ambiguity, but the ambiguity is introduced by evidence of something extrinsic, or by some collateral matter out of the instrument." *Id.* (quoting *Brown v. Guice*, 46 Miss. 299, 301-02 (1872)). If the contract is ambiguous due to a latent ambiguity, then relevant parol or extrinsic evidence may be used to resolve a latent ambiguity. *Id.*

¶22. In weighing the evidence, however, we must defer to the trial court's understanding of the facts. *Id.* at (¶20) (citing *Henry v. Moore*, 9 So. 3d 1146, 1152 (¶16) (Miss. Ct. App. 2008)). If the trial court's interpretation of these facts is neither clearly erroneous nor manifest error, we are unable to second-guess the conclusion the trial court reached. *Id.*

8

¶23. In the present case, the language on the contract that Davis used, by providing Kinnie with Melissa's name and birth date but Gray's social security number, was a latent ambiguity, because it only appeared when extrinsic evidence (in the form of Gray's social security card) was introduced. Therefore, extrinsic or parol evidence is permitted to resolve the ambiguity.

¶24. When considering extrinsic or parol evidence, the fact-finder should consider evidence of "prior negotiation[s], agreements[,] and conversations." *Ward*, 365 So. 3d at 315 (¶23). While there was testimony presented that Davis had other CDs with UMB and other banks, none of these other CDs were entered into the record. Therefore, we must rely solely on the testimony presented at trial for any evidence of prior agreements and conversations.

### I.  Earline Kinnie

¶25. Kinnie's testimony does appear to reflect that Davis named Melissa as his beneficiary:

> Q. And what name did [Davis] provide to you as the pay-on-death beneficiary?
>
> A. Melissa Bailey.
>
> . . . .
>
> Q. And did you go over the information that you had typed in with Mr. Davis prior to his signature?
>
> A. Yes, ma'am.
>
> Q. And did he confirm that Melissa Ann Bailey was the person he wanted to be the beneficiary of this certificate of deposit?
>
> A. Yes.

However, Kinnie also testified that Davis provided Gray's social security number:

> Q. Okay. And there's a social security number in there. Do you recall

> where that was provided to you?

A. That always comes from the customer.

THE COURT: That what now?

[Kinnie]: That comes from the customer. We ask the name, social, and date of birth.

Q. And did Mr. Donald Davis sign this document in your presence?

A. Yes.

Q. And did you go over the information that you typed in with Mr. Davis prior to his signature?

A. Yes, ma'am.

¶26. Kinnie also testified that Davis had other accounts with both UMB and other banks. On all the accounts with UMB, Kinnie stated Melissa was named as the sole beneficiary, with the correct social security number included. This acts as additional, extrinsic evidence of past agreements, all of which show Davis intended to leave his accounts to Melissa. Of course, considering the "totality of the circumstances," it is possible that this one CD, being for a significant amount, was meant to be designated to both Melissa and Gray as a means of sharing Davis's wealth. *Ward*, 365 So. 3d at 315 (¶23).

## II. *Cnealexis Gray*

¶27. Gray testified that Melissa's social security number is totally different from her own. She also stated that she did not believe her social security number just got "popped" on there. Gray, when questioned by the court, stated that she did not speak to her father about finances. Gray said that she was unaware of her name on any other CDs or accounts. Ultimately, aside

from her testimony that her social security number did not just appear on the beneficiary designation form, Gray did not offer any extrinsic proof that supported the theory that Davis intended to specifically name her as a joint beneficiary. Gray seemed to rest her entire case on the fact that Melissa's social security number is different from hers, and Davis must have provided Kinnie with her social security number for a reason. Because this testimony ultimately offers no additional information outside of what is evident on the face of the contract, it does not weigh in favor of either party.

¶28. Gray does argue in her brief to this court that, due to its unique spelling, Davis may not have wanted to spell out her first name (Cnealexis), and thus opted to provide her social security number instead. However, this argument was not made at trial. As such, it cannot be used to second-guess the chancellor's findings when nothing in the record supports this conclusion.

### III.   Melissa Johnson

¶29. Melissa testified that she and her father had discussions about his business affairs and his financial matters. Melissa said that Davis told her "[s]pecifically, that he was leaving everything to me, the property, the lands, and everything he had."[5]

¶30. Melissa's testimony is the clearest proof of Davis's intent, as it is an express statement that he intended to leave everything to her. While it is also true that this testimony is self-serving, "a party's own testimony is often self-serving, [and] a court does not exclude it as incompetent for that reason alone." *Catlett*, 358 So. 3d at 375 (¶45) (internal quotation

---

[5] Melissa also said that she did not know how Gray could have known Melissa's social security number.

11

marks omitted) (quoting *Parkman v. W&T Offshore Inc.*, 544 F. Supp. 3d 642, 650 (M.D. La. 2021)). "If all self-serving testimony were excluded from trials, they would be short indeed." *Id.* (quoting *C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (unpublished)). Therefore, "[a] court may not disregard evidence merely because it serves the interests of the party introducing it." *Id.*

¶31. The chancery court was tasked with weighing these three witnesses' testimony. The chancellor has the authority to weigh the credibility of witnesses and documents. *Id.* at (¶44). Furthermore, where there is more than one reasonable interpretation of the proof, the issue should be left to the trier of fact, here the chancellor. *Id.* Therefore, as we have reiterated many times before, "[t]he findings of a chancellor will not be disturbed unless this Court finds the chancellor abused his discretion, was manifestly wrong or made . . . findings [that were] clearly erroneous." *Id.*

¶32. Gray argues that the fact that Davis provided Kinnie with Gray's social security number and confirmed it was correct before signing it acted as proof that Davis intended to designate Gray as one of the beneficiaries of the CD. In support of this argument, Gray contends that a social security number is a sufficient form of designation because it is a unique identifier often used by government agencies, banks, and other institutions to identify a person. Melissa, on the other hand, points to the pay-on-death beneficiary statute,[6] which

---

[6] Mississippi Code Annotated section 81-5-62(a) (Supp. 2020) states:

Accounts payable at death may be established under the following conditions:

(a) An account in a bank, including a national bank, may be opened by any person or persons with directions to make such an account payable on the

uses the term "named beneficiary or beneficiaries."  Melissa argues that because the statute uses the word "name" specifically, the court should only consider the person whose actual, legal name is written on the designation form to be the pay-on-death beneficiary.

¶33.    The crux of the issue presented in this case is "what is a name?"  Should a court consider a name to be read broadly to include any unique identifier upon which a person could be referred to, including a unique social security number?  Or should it be read narrowly to only include the given name of a person?  After a review of existing Mississippi law, this issue appears to be one our appellate courts have not yet resolved on these facts. As such, we turn to other sources to help provide an answer to this question.

¶34.    While there appears to be many possible definitions that could apply to the statute, many of these definitions are unworkable and lead down a rabbit hole of contradictions. Instead of using these other possible definitions, we find the following definition is the most applicable:

> A person's name consists of one or more Christian or given names and one surname or family name.  It is a distinctive characterization in words by which one is known and distinguished from others, and description, or abbreviation, is not the equivalent of a "name."

---

death of the person or persons opening such an account to the *named* beneficiary or beneficiaries. When an account is so opened, the bank shall pay any monies to the credit of the account from time to time to, or pursuant to the order of, the person or persons opening such an account during his or their lifetime in the same manner as if the account were in the sole *name* or *names* of such person or persons. The term "accounts" or "account" as used in this section shall include, but not be limited to, any form of deposit or account, such as a savings account, checking account, time deposit, demand deposit or certificate of deposit, whether negotiable, nonnegotiable or otherwise.

(Emphasis added).

*Name*, Black's Law Dictionary 1023 (6th ed. 1991).[7]  This definition appears to be the most workable with the present facts involving Davis.  A person's name, most broadly read from this definition, is his or her given name and surname or married name.  Thus, Gray's name

---

[7]  *Black's Law Dictionary* also defines a name as:

> The designation of an individual person, or of a firm or corporation.  Word or combination of words used to distinguish person or thing or class from others.

*Name*, Black's Law Dictionary 1023 (6th ed. 1991).  When applied to the facts of this case, however, this definition becomes unwieldy and causes confusion.  The pay-on-death statute states that a beneficiary is designated by *name*.  However, according to the above definition, a name is a designation.  While we could turn to the definition of "Designation" in *Black's Law Dictionary* to possibly resolve this issue, that too appears to lead us in circles:

> An addition to a name, as of title, profession, trade, or occupation, to distinguish the person from others.  A description or descriptive expression by which a person or thing is denoted in a will without using the name.

*Designation*, Black's Law Dictionary 447 (6th ed. 1991).  Reading this definition, it appears that a name is any "description or descriptive expression" even when not using a name.  However, this contradicts the other definition of a name provided by *Black's Law Dictionary*, which states that a "description" is not the equivalent of a name.  Further, this now poses the question of whether or not a social security number is a "description or descriptive expression."  A description, in relevant part, is defined as:

> A method of pointing out a particular person by referring to his relationship to some other person or his character as an officer, trustee, executor, etc.

*Description*, Black's Law Dictionary 445 (6th ed. 1991).  Meanwhile a "legal name" is defined as

> one Christian name and one surname . . . . The 'legal name' of an individual consists of a given baptismal name, usually assumed at birth, and a surname deriving from the common name of the parents.

*Legal Name*, Black's Law Dictionary 896 (6th ed. 1991).  Because all these other possible definitions seem to contradict or use circular reasoning to define what is or is not a name, we adhere to the definition that most readily applies to the facts of the case at hand (which we quote in paragraph 34 of this opinion).

14

would be her first and last name but would not be her social security number.

¶35.    One could argue that under this definition Melissa was not properly named as a beneficiary because her surname is now Johnson, not Bailey.  However, under this definition a name is also the "distinctive characterization in words by which one is known and distinguished from others[.]"  Thus, if a person changes his or her name in a way that sufficiently changes the way in "which one is known and distinguished from others," then that name could sufficiently be used to designate the person as a beneficiary.  This could readily apply in cases where an individual marries (as did Melissa, who went from Melissa Ann Bailey to Melissa Johnson), goes by a nickname, or changes his or her name for any other reason, either legally or to such a degree that the person would be "known and distinguished from others" by that name.[8]

---

[8]  It is worth mentioning that some states, for public policy reasons, do not allow Arabic numerals to be used in a name.  Carlton F.W. Larson, *Naming Baby: The Constitutional Dimensions of Parental Naming Rights*, 80 Geo. Wash. L. Rev. 159, 168 (2011).  Indeed, while "no state prohibits the use of a numeral if it is spelled out[,] it would be permissible, for example, to name a child 'eight.'" However, several states prohibit the use of a numerical symbol, which would prohibit naming a child "8."  New Jersey, for example, permits the state registrar to reject names that contain "numerals" or a "combination of letters, numerals, or symbols." *Id*. (citing New Jersey Administrative Code section 8:2-1.4).  In Illinois, administrative practice prohibits numerals when used as a first character in the child's name. *Id*.  Lastly, Texas prohibits Arabic numerals as part of a name or suffix, though Roman numerals may be used for suffixes. *Id*.

While our State has not promulgated rules or regulations to this extent, the Mississippi Department of Health, in producing the Handbook on Registration and Reporting of Births, published guidelines for healthcare workers assisting new parents in completing Hospital Worksheet, Form 501 (Rev. 2013).  These guidelines state, "Accent marks may not be used except where it separates the name (e.g. O'Brien) however, numbers cannot be used."  Based on these guidelines, we recognize that one of our State actors may have expressed a public policy interest in restricting the definition of a "name" to exclude Arabic numerals or a combination of Arabic numerals, which could have resulted here were we to accept that a social security number can act as a "name" for the purpose of the

¶36.    Applying the above definition of a "name" that we are adopting to the facts at hand, the chancery court was correct in its reasoning that a parent is not likely to refer to his or her child by their social security number.  Rather, a parent is likely to refer to the child by his or her first and/or last name, because this acts as a "distinctive characterization in words by which one is known and distinguished from others[.]" *Id*.  Indeed, Davis identified Melissa by her maiden name, in part because that is likely what he knew her as for the majority of her life.  However, there is no evidence in the record to justify the reasoning that Davis "distinguished [Gray] from others" by her social security number.

¶37.    Weighing the evidence presented at trial, Kinnie's testimony confirmed that Davis provided and reviewed all of the information on the contract, both Melissa's name and Gray's social security number.  However, because a social security number is not a name, based on the reasoning above, it cannot be said that Davis, in providing and confirming Gray's social security number was correct, that he was naming her as a beneficiary.  Gray's testimony also provided no additional insight into Davis's intent that was not evident from the face of the documents.  Lastly, Melissa's testimony, while self-serving, is the only definitive statement as to Davis's possible intent regarding the beneficiary designation form.  Gray offered no evidence rebutting this testimony and indeed stated that she and her father never discussed his finances or business affairs.  Gray also conceded that Davis left no other CDs in her name.  Because of this, Melissa's testimony is the clearest piece of extrinsic

beneficiary designation.

16

evidence of Davis's intent.[9]

¶38.    Because the trial court found that the testimony presented at trial supported the conclusion that Davis intended to designate only Melissa as his pay-on-death beneficiary, and this conclusion was not manifestly wrong or clearly erroneous, we affirm.

## CONCLUSION

¶39.    The language of the beneficiary designation form was latently ambiguous. However, the extrinsic evidence presented at trial, in the form of Melissa's testimony, supports the conclusion that Davis intended to designate only Melissa Johnson as his pay-on-death beneficiary. Thus, we find that the trial court did not abuse its discretion, and its decision was neither manifestly wrong nor clearly erroneous.

¶40.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE AND SMITH, JJ., CONCUR. WILSON, P.J., McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[9] Gray also argues that in refusing to recognize her social security number as a name we would be de facto expunging the social security number from the contract, which we are not able to do based on the parol evidence rule. However, this is not the case. We are not expunging the social security number from the contract. Instead, we are simply finding that a social security number is insufficient to designate a beneficiary under the pay-on-death beneficiary statute based on the definition of a "name."